**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

| | |
|---|---|
| **JACK PATSCHULL, individually and on behalf of all others similarly situated,** | **Case No.: 3:26-cv-181** |
| **Plaintiff,** | **CLASS ACTION COMPLAINT** |
| **-v-** | **DEMAND FOR JURY TRIAL** |
| **FIGURE LENDING CORP., and FIGURE LENDING LLC,** | |
| **Defendants.** | |

1. Plaintiff Jack Patschull ("Plaintiff"), individually and on behalf of all others similarly situated ("Class Members"), brings this Class Action Complaint ("Complaint") against Defendant Figure Lending Corp. and its wholly owned subsidiary, Defendant Figure Lending LLC (together, "Defendants" or "Figure"), and alleges, upon personal knowledge as to Plaintiff's own actions and upon information and belief and Plaintiff's counsel's investigation as to all other matters, as follows:

**NATURE OF THE ACTION**

1. With this action, Plaintiff seeks to hold Defendants responsible for the harms they caused Plaintiff and approximately one million other similarly situated persons in the preventable data breach of Defendants' inadequately protected computer network systems ("Systems") in or around January 28, 2026 ("Data Breach").

2. Figure is a blockchain-based lending company.

3. Figure's Systems include the use of blockchain technology through the Provenance Blockchain, a blockchain built specifically to support the financial services industry, and which is

a public blockchain. Figure's Systems use the Provenance Blockchain to speed along approvals for home equity loans, mortgage refinancing, and student and personal loans. Figure's Systems allow asset owners to borrow against their Bitcoin and Ethereum holdings.

4.     As a part of its operations, Defendants collect, maintain, and store borrowers' and prospective borrowers' highly sensitive personally identifiable information, including financial information ("PII").

5.     On or about February 13, 2026, Figure disclosed, through press releases, that the Data Breach resulted from a Figure employee who was tricked with a social engineering attack that allowed the hacking group, ShinyHunters, to steal the PII of Plaintiff and Class Members in Figure's Systems.

6.     Figure refused to pay a ransom that ShinyHunters demanded in exchange for the return of the stolen PII. Thereafter, ShinyHunters published approximately 2.5 gigabytes of PII, including that of Plaintiff and Class Members, on the dark web.

7.     This class action seeks to redress Defendants' unlawful, willful, and wanton failure to protect and secure the PII it collected from Plaintiff and Class Members.

8.     As a result of Defendants' woefully inadequate data security measures—including its failure to utilize basic encryption for sensitive data, its failure to adequately train its employees as its "Human Firewall," and its use of a single sign-on system—the PII of approximately 1 million customer accounts was exposed and stolen in the avoidable Data Breach.

9.     By collecting, using, and deriving a benefit from Plaintiff's and Class Members' PII, Defendants assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiff's and Class Members' PII (sometimes referred to herein as "Private Information" or "Personal Information") from unauthorized disclosure.

10. Plaintiff and Class Members relied on Defendants to keep their Private Information confidential and secure from unauthorized access, and to make only authorized disclosures of their information.

11. On or about February 24, 2026, Plaintiff received notice of the Data Breach by letter from Defendants ("Notice").

12. The Notice states that, on an unknown date, Defendants "identif[ied] evidence that on January 28, 2026[,] data containing personal information was obtained through queries on company databases that store loan and loan inquiry data."[1]

13. The Notice confirmed that Plaintiff's name, Social Security number, address, phone number, email, date of birth, loan account number, and loan information were stolen in the Data Breach.

14. Although the Data Breach occurred on January 28, 2026, and a ransom was made and the PII of Plaintiff and Class Members was posted to the dark web within days of the Data Breach, Defendants inexcusably failed to notify Plaintiff and Class Members until beginning in late February and early March 2026.

15. By taking possession and control of Plaintiff's and Class Members' Private Information, Figure assumed a duty to securely store and protect it.

16. Figure breached this duty and betrayed the trust of Plaintiff and Class Members by failing to properly safeguard and protect their PII, thus enabling cybercriminals to access, view, exfiltrate, copy, misuse, and release it.

17. Figure's misconduct included, *inter alia*, failing to: implement adequate and reasonable data security measures to protect Plaintiff's and Class Members' Private Information;

---

[1] *See* Exhibit 1. *See also*, the full form-Notice, annexed as Exhibit 2.

timely detect the Data Breach; take adequate steps to prevent and stop the Data Breach; disclose the material fact that it did not have adequate data security practices in place to safeguard the PII it collected and stored; and provide timely and adequate notice of the Data Breach. These failures caused substantial harm and injuries to Plaintiff and Class Members across the United States.

18.     Due to Defendants' negligence, Plaintiff's and Class Members' PII is now in the hands of cybercriminals, who can further use their information to commit multiple forms of fraud and identity theft, wreaking havoc on the personal lives of nearly a million individuals.

19.     Upon information and  belief, the hacker has already posted the PII stolen in the Data Breach to the dark web, where it can be further exploited for criminal purposes.

20.     For the rest of their lives, Plaintiff and Class Members will therefore face a risk of fraud and identity theft at the hands of criminals who seek to misuse their PII.

21.     Plaintiff and Class Members have already and will continue to spend time responding to the Data Breach and are at an immediate, imminent, and heightened risk of all manner of fraud and identity theft as a direct and proximate result of the Data Breach. Plaintiff and Class Members have incurred and will continue to incur damages in the form of, among other things, identity theft, attempted identity theft, lost time and expenses mitigating harms, increased risk of harm, damaged credit, deprivation of the value of their PII, loss of privacy, and additional damages as described below.

22.     Figure's harmful conduct has injured Plaintiff and Class Members in multiple ways, including: (i) invasion of privacy and theft of PII; (ii) the lost or diminished value of their PII; (iii) costs associated with the prevention, detection, and recovery from identity theft, tax fraud, and other unauthorized use of their data; (iv) lost opportunity costs to mitigate the Data Breach's consequences, including lost time; (v) lost benefit of their bargain; (vi) emotional distress

4

associated with the loss of control over their highly sensitive Private Information; and (vii) substantial and ongoing risk that their Private Information will be misused, including through identity theft and financial fraud.

23.     Plaintiff brings this action individually and on behalf of the Class, seeking remedies including, but not limited to, compensatory damages, reimbursement of out-of-pocket costs, disgorgement, injunctive and declaratory relief, reasonable attorneys' fees and costs, and all other remedies this Court deems proper.

## PARTIES

24.     Plaintiff Jack Patschull is a citizen and resident of Minnesota, where Plaintiff intends to remain.

25.     Defendant Figure Lending Corp. is a Delaware corporation that is headquartered in Charlotte, North Carolina, with its principal office located at 650 S. Tryon Street, 8th Floor, Charlotte, North Carolina 28202.

26.     Defendant Figure Lending LLC is a Delaware limited liability company that is headquartered in Charlotte, North Carolina, with its principal office located at 650 S. Tryon Street, 8th Floor, Charlotte, North Carolina 28202. Upon information and belief, Defendant Figure Lending LLC is the wholly owned subsidiary of Defendant Figure Lending Corp.

## JURISDICTION AND VENUE

27.     This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. The number of Class Members is over 100, and at least one Class Member, including Plaintiff, is a citizen of a state that is diverse from Defendants' citizenship. Defendants

5

are citizens of Delaware and Plaintiff is a citizen of Minnesota. Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

28.     This Court has personal jurisdiction over Defendants because Defendants conduct business in this District, maintain principal places of business in this District, have sufficient minimum contacts with this State, and further, because a substantial part of the events or omissions giving rise to the claims alleged in this Action also occurred in this District.

29.     Venue is proper as to Defendants in this District under 28 U.S.C. § 1391(a)(1) because Defendants maintain principal places of business in this District and therefore reside in this District pursuant to 28 U.S.C. § 1391(c)(2). Venue is also proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims alleged in this action also occurred in this District.

## FACTUAL ALLEGATIONS

30.     Plaintiff and Class Members are and/or were applicants and/or borrowers of home equity lines of credit from and/or through Defendants. Plaintiff and Class Members directly or indirectly entrusted Defendants with their PII.

31.     Plaintiff and Class Members value their privacy and have taken reasonable steps to maintain the confidentiality of their PII.

32.     Plaintiff and Class Members reasonably expected that Defendants would keep their sensitive Private Information confidential and securely maintained, use their information for necessary purposes only, and make only authorized disclosures of their information.

33.     By obtaining, collecting, and storing Plaintiff's and Class Members' Private Information, Defendants assumed equitable and legal duties to protect Plaintiff's and Class Members' PII from involuntary disclosure to third parties.

6

34.     Despite Defendants' duties to protect Plaintiff's and Class Members' Private Information, Defendants failed to implement reasonable and industry-standard data protections to secure Plaintiff's and Class Members' information from unauthorized access and disclosure and allowed hackers to breach its network and systems ("Systems") and obtain Plaintiff's and Class Members' PII stored therein.

35.     On an undisclosed date in 2026, Defendants became aware of the January 28, 2026 Data Breach and theft of Plaintiff's and Class Members' Private Information.

36.     On an undisclosed date in 2026, Defendants also became aware that the PII solen in the Data Breach was posted on the dark web after refusing a ransom demand from the Data Breach hackers.

37.     Defendants have not disclosed to Plaintiff and Class Members how or when Defendants learned of the Data Breach and PII theft, the ransom, or subsequent posting of their PII on the dark web.

38.     The PII exfiltrated in the Data Breach includes applicants' and borrowers' names, Social Security numbers, addresses, phone numbers, emails, dates of birth, loan account numbers, and loan information.

39.     Defendants have failed to provide timely notice of the Data Breach to Plaintiff and Class Members regarding the scope, nature, and potential consequences of the Data Breach.

40.     The hackers behind the cyberattack on Defendants were successful in exfiltrating sensitive Private Information from Defendants' data network and leaked the data that they obtained online.

7

41. Upon information and belief, the Data Breach is a direct result of Defendants' failure to implement reasonable and industry-standard data protections to secure Plaintiff's and Class Members' Personal Information.

42. Plaintiff is a borrower of Defendants' lending service. Plaintiff first became a borrower in November 2025. As a borrower, Plaintiff's Private Information was contained within Defendants' Systems on or around January 2026, the period in which the Data Breach occurred.

43. Pursuant to this relationship, Defendants required that Plaintiff disclose a wide variety of Private Information, including Plaintiff's name, Social Security number, address, phone number, email, date of birth, loan account number, and loan information.

44. In doing so, Plaintiff trusted that Defendants would use reasonable measures to protect Plaintiff's Private Information according to Defendants' data security policies, as well as State and Federal law.

45. Plaintiff would not have allowed Defendants to maintain Plaintiff's Private Information if Plaintiff believed Defendants would fail to implement reasonable and industry standard practices to safeguard the Private Information from unauthorized access and exfiltration.

46. Defendants obtained and continue to maintain Plaintiff's Private Information and have a continuing legal duty and obligation to protect that Private Information from unauthorized access and disclosure.

47. Plaintiff is very careful about the privacy and security of Plaintiff's Private Information—and Plaintiff protects Plaintiff's Private Information by, *inter alia*, keeping sensitive documents in a safe location and changing online passwords frequently.

48. Additionally, Plaintiff checks Plaintiff's credit report frequently.

8

49.     Plaintiff suffered an invasion of privacy when Plaintiff's Private Information was exposed and then stolen by the extortionist hackers, ShinyHunters, as a result of the Data Breach.

50.     Upon information and belief, the hackers already leaked the Private Information of Plaintiff and Class Members on the dark web.

51.     Plaintiff has spent—and will continue to spend—significant time and effort monitoring Plaintiff's accounts to protect Plaintiff from identity theft and other harms.

52.     As a result of the Data Breach, Plaintiff has lost time attempting to mitigate the fallout of the Data Breach by implementing security precautions. This is valuable time that Plaintiff would have spent on other activities, including but not limited to work and/or recreation.

53.     Plaintiff suffered actual injury in the form of damages to and diminution in the value of Plaintiff's Private Information when it was stolen by the hackers. Private Information is a form of intangible property—property that Defendants were required to adequately protect.

54.     As a user of Defendants' loan services, Plaintiff suffered actual injury and lost the benefit of the bargain because Plaintiff provided Plaintiff's Private Information to Defendants with the reasonable and mutual expectation that Defendants would implement and maintain reasonable data security practices—but Defendants cut corners and did not provide the bargained for data security. If Defendants were transparent about their deficient data security, Plaintiff would not have entrusted Defendants with Plaintiff's PII.

55.     Because of the Data Breach, Plaintiff suffers from the imminent and impending injury of the substantially increased risk of misuse, fraud, and identity theft.

56.     Defendants deprived Plaintiff of the earliest opportunity to guard against the Data Breach's harmful effects by failing to promptly notify Plaintiff about it.

9

57.    Plaintiff has a continuing interest in ensuring that Plaintiff's Private Information—which, on information and belief, is still within the custody or control of Defendants—is protected and safeguarded from additional breaches or cybersecurity risks.

58.    As a direct and traceable result of the Data Breach, Plaintiff suffered actual injury and damages after Plaintiff's PII was compromised in the Data Breach, including, but not limited to: (a) lost time and money related to monitoring Plaintiff's accounts and credit reports for fraudulent activity and researching the Data Breach; (b) loss of privacy due to Plaintiff's Private Information being accessed and stolen by cybercriminals; (c) theft of Private Information; (d) loss of the benefit of the bargain because Defendants did not adequately protect Plaintiff's Private Information; (e) emotional distress because identity thieves now possess Plaintiff's Private Information; (f) imminent injury arising from the increased risk of fraud and identity theft now that Plaintiff's Private Information has been stolen and published on the dark web, where it remains unencrypted and available for unauthorized third parties to access and abuse, remains backed up in Defendants' possession, and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the Private Information it collects and stores; (g) diminution in the value of Plaintiff's Private Information, a form of intangible property that Defendants obtained from Plaintiff; and (h) other economic and non-economic harm.

59.    As a condition of using Defendants' loan services, Plaintiff and Class Members were required to entrust their sensitive and Private Information to Defendants.

60.    Defendants retain and store this personal Information and derive a substantial economic benefit from the Private Information they collect. But for the collection of Plaintiff's and Class Members' PII, Defendants would be unable to perform their services.

61.    By collecting and storing the PII of Plaintiff and Class Members, Defendants assumed legal and equitable duties and knew or should have known that they were responsible for protecting Plaintiff's and Class Members' Private Information from disclosure.

62.    Plaintiff and Class Members have taken reasonable steps to maintain the confidentiality of their PII and relied on Defendants to keep their PII confidential and maintained securely, to use their information for business purposes only, and to make only authorized disclosures of their information.

63.    Defendants could have prevented the Data Breach by properly securing and encrypting the files and servers containing the Private Information of Plaintiff and Class Members, and training their employees against social engineering hacking.

64.    Defendants' negligence in safeguarding the PII of Plaintiff and Class Members is exacerbated by Defendants' awareness of the importance of protecting and securing sensitive data as a blockchain lender and by the delayed and inadequate Notice.

## CLASS ACTION ALLEGATIONS

65.    Plaintiff brings this action as a class action under Rule 23 of the Federal Rules of Civil Procedure on behalf of a Nationwide Class as follows: All individuals in the United States whose Private Information was compromised in the Data Breach ("Class").

66.    Excluded from the Class are the following individuals and/or entities: Defendants and Defendants' parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendants have a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

11

67.     Plaintiff reserves the right to amend the definitions of the Class or add a subclass if further information and discovery indicate that the definitions of the Class should be narrowed, expanded, or otherwise modified.

68.     Class certification of Plaintiff's claims is appropriate because Plaintiff can prove the elements of the claims on a class-wide basis utilizing the same evidence as would be used to prove those elements in separate actions alleging the same claims.

69.     **Numerosity:** The members of the Class are so numerous that joinder of all members is impracticable, if not completely impossible. Although the precise number of individuals is currently unknown to Plaintiff and exclusively in the possession of Defendants, upon information and belief, approximately one million individuals were impacted. The Class is apparently identifiable within Defendants' records, and Defendants have already identified these individuals (as evidenced by sending them breach Notice letters).

70.     **Commonality:** Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to the Class that predominate over questions which may affect individual Class members, including the following:

a.   Whether and to what extent Defendants had a duty to protect the Private Information of Plaintiff and Class Members;

b.   Whether Defendants had duties not to disclose the Private Information of Plaintiff and Class Members to unauthorized third parties;

c.   Whether Defendants failed to adequately safeguard the Private Information of Plaintiff and Class Members;

d. Whether Defendants were negligent in collecting and storing Plaintiff's and Class members' Private Information, and breached their duties thereby;

e. When Defendants actually learned of the Data Breach;

f. Whether Defendants adequately, promptly, and accurately informed Plaintiff and Class Members that their Private Information had been compromised;

g. Whether Defendants violated the law by failing to promptly notify Plaintiff and Class Members that their Private Information had been compromised;

h. Whether Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

i. Whether Defendants adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur;

j. Whether Defendants were unjustly enriched;

k. Whether Defendants' conduct violated the statutes as set forth herein;

l. Whether Plaintiff and Class Members are entitled to actual damages, statutory damages, and/or nominal damages as a result of Defendants' wrongful conduct; and

m. Whether Plaintiff and Class Members are entitled to equitable relief, including injunctive relief or restitution to redress the imminent and currently ongoing harm faced as a result of the Data Breach.

71. **Typicality:** Plaintiff's claims are typical of those of the other members of the Class because Plaintiff, like every other Class Member, was exposed to virtually identical conduct and now suffer from the same violations of the law as each other member of the Class.

13

72.    **Predominance and Policies Generally Applicable to the Class:** This class action is also appropriate for certification because Defendants acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate with respect to the Class as a whole. Defendants' policies challenged herein apply to and affect Class Members uniformly, and Plaintiff's challenges of these policies hinge on Defendants' conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

73.    **Adequacy:** Plaintiff will fairly and adequately represent and protect the interests of the Class Members in that Plaintiff has no disabling conflict of interest that would be antagonistic to those of the other Class Members. Plaintiff seeks no relief that is antagonistic or adverse to the Class Members and the infringement of the rights and the damages Plaintiff has suffered are typical of other Class Members. Plaintiff has retained counsel experienced in complex class action and data breach litigation, and Plaintiff intends to prosecute this action vigorously.

74.    **Superiority and Manageability:** Class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against large corporations, like Defendants. Further, even for

14

those Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

75.     The nature of this action and the nature of laws available to Plaintiff and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiff and Class Members for the wrongs alleged because Defendants would necessarily gain an unconscionable advantage since they would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiff is exposed is representative of that experienced by the Class and will establish the right of each Class Member to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

76.     The litigation of the claims brought herein is manageable. Defendants' uniform misconduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrate that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

77.     Unless a Class-wide injunction is issued, Defendants may continue in their failure to properly secure the Private Information of Plaintiff and Class Members, may continue to refuse to provide proper notification to Plaintiff and Class Members regarding the Data Breach, and may continue to act unlawfully as set forth in this Complaint.

78.     **<u>Injunctive Relief</u>:** Defendants have acted and/or refused to act on grounds that apply generally to the Class, making injunctive and/or declaratory relief appropriate with respect to the Class under Federal Rule of Civil Procedure 23(b)(2).

79. Class certification under Federal Rule of Civil Procedure 23(c)(4) is also appropriate because this Court can designate specific claims or issues or class-wide treatment and may designate multiple subclasses. Particular issues are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

    a. Whether Defendants failed to timely notify the Plaintiff and the Class of the Data Breach;

    b. Whether Defendants owed a legal duty to Plaintiff and the Class to exercise due care in collecting, storing, and safeguarding their Private Information;

    c. Whether Defendants' security measures to protect their data Systems were reasonable in light of best practices recommended by data security experts;

    d. Whether Defendants' failure to institute adequate protective security measures amounted to negligence;

    e. Whether Defendants failed to take commercially reasonable steps to safeguard consumer Private Information; and

    f. Whether adherence to Federal Trade Commission ("FTC") data security recommendations and measures recommended by data security experts would have reasonably prevented the Data Breach.

80. Finally, all members of the proposed Class are readily ascertainable. Defendants have access to Class Members' names and addresses affected by the Data Breach. Adequate notice can be given to Class Members directly using information maintained in Defendants' records.

## CAUSES OF ACTION

### COUNT I
### NEGLIGENCE
**(On Behalf of Plaintiff and the Class)**

81.     Plaintiff realleges and incorporates by reference all preceding factual allegations, as if fully set forth herein.

82.     Defendants owe a duty under common law to Plaintiff and the Class to exercise reasonable care in safeguarding, securing, and protecting the highly sensitive and confidential data they solicit, collect, store, and maintain. This includes a duty to exercise reasonable care in safeguarding, securing, and protecting Plaintiff's and Class Members' Private Information.

83.     Defendants owe a duty of care to Plaintiff and Class Members to provide data security consistent with industry standards, and other requirements discussed herein, to ensure that their Systems, and the personnel responsible for them and that use them, adequately secure and protect the Private Information that Defendants solicit, collect, store, and maintain.

84.     Defendants' duty to use reasonable data security measures includes, among other things: (a) designing, maintaining, and testing their security protocols to ensure that the Private Information of Plaintiff and Class Members is adequately secured and protected; (b) removing or deleting sensitive data when no longer needed for authorized purposes; and (c) implementing and maintaining procedures to detect and prevent improper access to and misuse of Plaintiff's and Class Members' Private Information.

85.     Defendants owe a duty of care to Plaintiff and Class Members to provide data security consistent with industry standards, applicable standards of care from statutory authority like Section 5 of the Federal Trade Commission Act ("FTC Act") and other requirements, and to

ensure that its Systems and networks, and the personnel responsible for them, adequately protect individuals' Private Information.

86.     By soliciting, accepting, storing, and maintaining Plaintiff's and Class Members' Private Information, Defendants undertook a duty to exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties.

87.     Figure solicits, collects, stores, and maintains the Private Information of Plaintiff and Class Members as part of its regular business practices as a home equity lender.

88.     Figure required Plaintiff and Class Members to entrust it with their Private Information in order to obtain and maintain a borrower account and loans. Figure requires its borrowers, including Plaintiff and Class Members, to submit PII in the ordinary course of providing its lending services.

89.     Figure gathered and stored the PII of Plaintiff and Class Members as part of its business of soliciting its services to its borrowers, which solicitations and services affect commerce.

90.     Plaintiff and Class Members entrusted Figure with their PII with the reasonable and mutual understanding that Figure would safeguard their information.

91.     Figure had full knowledge of the sensitivity of the Private Information it collected and stored and the types of harm that Plaintiff and Class Members could and would suffer if their Private Information were wrongfully disclosed.

92.     By voluntarily undertaking and assuming the responsibility to collect and store Plaintiff's and Class Members' PII, and in fact doing so, Figure had a duty of care to use reasonable

18

means to secure and safeguard its Systems—and Plaintiff's and Class Members' PII held within it—to prevent disclosure of the information, and to safeguard the information from theft.

93. Figure's duty included a responsibility to implement processes by which it could detect a breach of its security systems in a reasonably expeditious period of time and to give prompt notice to those affected in the case of a data breach.

94. Figure had a duty to employ reasonable security measures under Section 5 of the FTC Act, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

95. Figure owed a duty of care to Plaintiff and Class Members to provide data security consistent with industry standards and other requirements, and to ensure that its Systems and networks adequately protected the Private Information it collected and stored.

96. Figure's duty of care to use reasonable security measures arose as a result of the special relationship that existed between Defendants on the one hand and Plaintiff and Class Members on the other. That special relationship arose because Plaintiff and the Class entrusted Figure with their PII, a necessary part of being applicants and borrowers of Defendants' loans and loan services.

97. Figure's duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described herein, but also because Figure is bound by industry standards to protect PII.

98. Figure was subject to an "independent duty," untethered to any contract between Figure and Plaintiff or the Class.

99.     Figure also had a duty to exercise appropriate clearinghouse practices to remove former borrowers' and applicants' PII that it was no longer required to retain pursuant to regulations.

100.    Moreover, Figure had a duty to promptly and adequately notify Plaintiff and the Class of the Data Breach.

101.    Figure had and continues to have a duty to adequately disclose that the Private Information of Plaintiff and the Class within Figure's possession might have been compromised, how it was compromised, and precisely the types of data that were compromised and when. Such notice was necessary to allow Plaintiff and the Class to take steps to prevent, mitigate, and repair any identity theft and the fraudulent use of their PII by third parties.

102.    Figure breached its duties, pursuant to the FTC Act and other applicable standards, and thus was negligent, by failing to use reasonable measures to protect Plaintiff's and Class Members' PII. The specific negligent acts and omissions committed by Defendants include, but are not limited to, the following:

    a.  Failing to adopt, implement, and maintain adequate security measures to safeguard Plaintiff's and Class Members' Private Information;

    b.  Failing to adequately monitor the security of its networks and Systems;

    c.  Allowing unauthorized access to Plaintiff's and Class Members' Private Information;

    d.  Failing to detect in a timely manner that Plaintiff's and Class Members' Private Information had been compromised;

    e.  Failing to remove former borrowers' and applicants' Private Information after it was no longer required to retain it pursuant to regulations; and

20

f. Failing to timely and adequately notify Plaintiff and Class Members about the Data Breach's occurrence and scope, so they could take appropriate steps to mitigate the potential for identity theft and other damages.

103. Figure violated Section 5 of the FTC Act by failing to use reasonable measures to protect Private Information and not complying with applicable industry standards..

104. Plaintiff and Class Members were within the class of persons the FTC Act was intended to protect and the type of harm that resulted from the Data Breach was the type of harm that the statute was intended to guard against.

105. Figure's violation of Section 5 of the FTC Act constitutes negligence.

106. The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and the Class.

107. A breach of security, unauthorized access, and resulting injury to Plaintiff and the Class was reasonably foreseeable, particularly in light of Figure's inadequate security practices.

108. It was foreseeable that Figure's failure to use reasonable measures to protect Plaintiff's and Class Members' Private Information would result in injury. Further, the Data Breach was reasonably foreseeable given the known high frequency of cyberattacks and data breaches.

109. Figure had full knowledge of the sensitivity of the PII and the types of harm that Plaintiff and the Class could and would suffer if the PII were wrongfully disclosed.

110. Plaintiff and the Class were the foreseeable and probable victims of inadequate data security practices and procedures. Figure knew or should have known of the inherent risks in collecting and storing the PII of Plaintiff and the Class, the critical importance of providing

adequate security for that PII, and the necessity of encrypting PII stored on its Systems or transmitted through third party systems.

111.    It was therefore foreseeable that the failure to adequately safeguard Plaintiff's and Class Members' PII would result in one or more types of injuries to Plaintiff and Class Members.

112.    Plaintiff and the Class had no ability to protect their PII that was in, and upon information and belief, remains in, Figure's possession.

113.    Figure was in the best position to protect against the harm suffered by Plaintiff and the Class as a result of the Data Breach.

114.    Figure's duty extended to protecting Plaintiff and the Class from the risk of foreseeable criminal conduct of third parties, which has been recognized in situations where the actor's own conduct or misconduct exposes another to the risk or defeats protections put in place to guard against the risk, or where the parties are in a special relationship. *See* Restatement (Second) of Torts § 302B. Numerous courts and legislatures have also recognized the existence of a specific duty to reasonably safeguard PII.

115.    Figure has admitted that the PII of Plaintiff and the Class was wrongfully stolen and disclosed to unauthorized third persons as a result of the Data Breach.

116.    But for Figure's wrongful and negligent breach of duties owed to Plaintiff and the Class, the PII of Plaintiff and the Class would not have been compromised and stolen in the Data Breach.

117.    There is a close causal connection between Figure's failure to implement adequate data security measures to protect the PII of Plaintiff and the Class and the harm, or risk of imminent harm, suffered by Plaintiff and the Class. The PII of Plaintiff and the Class was lost and accessed

22

as the proximate result of Figure's failure to exercise reasonable care in safeguarding such PII by adopting, implementing, and maintaining appropriate data security measures.

118.     As a direct and proximate result of Figure's negligence, Plaintiff and the Class have suffered and will suffer injury, including but not limited to: (i) invasion of privacy; (ii) theft of their Private Information; (iii) lost or diminished value of PII; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) nominal damages; and (vii) the continued and certainly increased risk to their PII, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Figure's possession and is subject to further unauthorized disclosures so long as Figure fails to undertake appropriate and adequate measures to protect the PII.

119.     Plaintiff and Class Members are entitled to compensatory and consequential damages suffered as a result of the Data Breach.

120.     Plaintiff and Class Members are also entitled to injunctive relief requiring Figure to: (i) strengthen its data security Systems and monitoring procedures; (ii) submit to future annual audits of those Systems and monitoring procedures; and (iii) continue to provide adequate credit monitoring to all Class Members.

**COUNT II**
**BREACH OF IMPLIED CONTRACT**
**(On Behalf of Plaintiff and the Class)**

121.     Plaintiff realleges and incorporates by reference all preceding factual allegations, as if fully set forth herein.

122.     When Plaintiff and Class Members provided consideration and PII to Figure, they entered into implied contracts with Figure, pursuant to which Figure agreed to implement and

maintain reasonable data security practices to adequately secure and protect the PII it collected and stored.

123.     Defendants solicited and invited Plaintiff and Class Members to entrust them with their PII, which they were required to provide in order to obtain and maintain a loan account.

124.     Plaintiff and Class Members provided their PII to Defendants with the reasonable and mutual expectation that Defendants would implement and maintain reasonable and adequate data security practices to protect their PII from unauthorized access. Defendants knew or reasonably should have known that Plaintiff and Class Members held this belief and expectation.

125.     In entering into such implied contracts, Plaintiff and Class Members reasonably believed and expected that Figure's data security practices complied with relevant laws and regulations (including FTC guidelines on data security) and were consistent with industry standards.

126.     Defendants impliedly promised to implement and maintain reasonable and adequate data security practices to protect Plaintiff's and Class Members' PII from unauthorized access.

127.     By accepting Plaintiff's and Class Members' PII, Defendants implicitly represented that their data security practices were sufficient to protect and secure the PII collected and stored.

128.     Defendants' conduct in requiring applicants and borrowers, including Plaintiff and Class Members, to provide their PII illustrates Defendants' intent to be bound by an implied promise to implement and maintain reasonable data security practices sufficient to protect and secure the PII Figure collected and stored.

129.     Implicit in the agreement between Figure and Plaintiff and Class Members, was Figure's obligation to: (a) use the Private Information it collected and stored for business purposes

only; (b) take reasonable steps to safeguard that Private Information; (c) prevent unauthorized disclosures of the PII; (d) provide Plaintiff and Class Members with prompt and sufficient notice of any and all unauthorized access and/or theft of their Private Information; (e) reasonably safeguard and protect the PII of Plaintiff and Class Members from unauthorized disclosure; and (f) retain the PII it collected and stored only under conditions that kept such information secure and confidential.

130.     The mutual understanding and intent of Plaintiff and Class Members on the one hand, and Figure, on the other, is demonstrated by their conduct and course of dealing.

131.     Plaintiff and Class Members would not have provided their PII to Defendants in the absence of Figure's implied promise to implement and maintain reasonable data security practices.

132.     Plaintiff and Class Members fully performed their obligations under their implied contracts with Defendants. They provided their PII to Defendants in exchange for Figure's consideration of their loan applications, loans, and lending accounts and Figure's implied promise to adopt reasonable data security safeguards.

133.     Figure breached its implied contracts with Plaintiff and Class Members by failing to implement and maintain reasonable data security practices.

134.     Figure breached the implied contracts it made with Plaintiff and the Class by failing to safeguard and protect their PII, by failing to delete the Private Information of the Class from its network once the relationship ended, and by failing to provide accurate and timely notice to Plaintiff and Class Members that their Private Information was compromised and stolen as a result of the Data Breach.

135.     As a result of Figure's misconduct, Plaintiff and Class Members have suffered, and continue to suffer, legally cognizable damages arising from the Data Breach.

136. As a direct and proximate result of Figure's breach of its implied contracts, Plaintiff and Class members sustained damages, including, but not limited to: (i) invasion of privacy; (ii) theft of their Private Information; (iii) lost or diminished value of Private Information; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of their bargain; (vi) nominal damages; and (vii) the continued and certainly increased risk to their PII.

137. Plaintiff and Class Members are entitled to compensatory, consequential, and nominal damages suffered as a result of the Data Breach.

138. Plaintiff and Class Members are also entitled to injunctive relief requiring Figure to: (i) strengthen its data security Systems and monitoring procedures; (ii) submit to future annual audits of those Systems and monitoring procedures; and (iii) immediately provide adequate credit monitoring to all Class Members.

**COUNT III**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and the Class)**

139. Plaintiff realleges and incorporates by reference all preceding factual allegations, as if fully set forth herein.

140. Plaintiff brings this Count in the alternative to the breach of implied contract count above.

141. Plaintiff and Class Members conferred a benefit on Figure by providing their PII to Defendants. In exchange, Plaintiff and Class Members should have received from Figure the services that were the subject of their transactions and should have had their Private Information protected with adequate data security.

142.     Figure knew that Plaintiff and Class Members conferred a benefit upon it and accepted and retained that benefit by accepting and retaining the Private Information entrusted to it. Figure profited from its collection of Plaintiff's and Class Members' data and used Plaintiff's and Class Members' PII for business purposes.

143.     Figure failed to secure Plaintiff's and Class Members' PII and, therefore, did not fully compensate Plaintiff and Class Members for the value that their PII provided.

144.     Figure acquired Plaintiff's and Class Members' Private Information through inequitable means because it failed to investigate and/or disclose the inadequate data security practices previously alleged.

145.     If Plaintiff and Class Members had known that Figure would not implement and maintain adequate data security practices to monitor, supervise, and secure their Private Information, they would not have entrusted their Private Information to Figure.

146.     Plaintiff and Class Members have no adequate remedy at law.

147.     Figure enriched itself by saving the costs it reasonably should have expended on data security measures to secure Plaintiff's and Class Members' PII. Instead of providing a reasonable level of data security that would have prevented the Data Breach or mitigated its effects, Figure instead calculated to increase its own profit at the expense of Plaintiff and Class Members by utilizing cheaper, ineffective security measures and diverting those funds to its own profit. Plaintiff and Class Members, on the other hand, suffered as a direct and proximate result of Figure's decision to prioritize its own profits over the requisite security and the safety of their PII.

148.     Under the circumstances, it would be unjust for Figure to be permitted to retain any of the benefits that Plaintiff and Class Members conferred upon it.

149.    As a direct and proximate result of Figure's misconduct, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) invasion of privacy; (ii) theft of their Private Information; (iii) lost or diminished value of Private Information; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of their bargain; (vi) nominal damages; and (vii) the continued and certainly increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Figure's possession and is subject to further unauthorized disclosures so long as Figure fails to undertake appropriate and adequate measures to protect their Private Information.

150.    Plaintiff and Class Members are entitled to damages from Figure and/or an order proportionally disgorging all profits, benefits, and other compensation obtained by Figure from its wrongful conduct. This can be accomplished by establishing a constructive trust from which the Plaintiff and Class Members may seek compensation.

151.    Plaintiff and Class Members may not have an adequate remedy at law against Figure, and accordingly, they plead this claim for unjust enrichment in addition to, or in the alternative to, other claims pleaded herein.

## COUNT IV
## DECLARATORY JUDGEMENT
### (On Behalf of Plaintiff and the Class)

152.    Plaintiff realleges and incorporates by reference all preceding factual allegations, as if fully set forth herein.

153.    Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant

further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the federal and state statutes described in this Complaint.

154. An actual controversy has arisen in the wake of the Data Breach regarding Plaintiff's and Class Members' PII and whether Figure is currently maintaining data security measures adequate to protect Plaintiff and Class Members from further data breaches that compromise their PII.

155. Plaintiff alleges that Figure's data security measures remain inadequate.

156. Furthermore, Plaintiff continues to suffer injury as a result of the compromise of Plaintiff's PII and remains at imminent risk that further compromises of Plaintiff's PII will occur in the future.

157. Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

    a. Figure owes a legal duty to secure the PII of its current and/or former users of its loan services and to timely notify impacted individuals of a data breach under common law and various state and federal statutes; and

    b. Figure continues to breach this legal duty by failing to employ reasonable measures to secure the PII in its possession.

158. This Court should also issue corresponding prospective injunctive relief requiring Defendants to employ adequate data security protocols consistent with law and industry standards to protect PII in Figure's Systems.

159. If an injunction is not issued, Plaintiff will suffer irreparable injury, and lack an adequate legal remedy, in the event of another data breach at Figure. The risk of another such breach is real, immediate, and substantial. If another breach at Figure occurs, Plaintiff will not

have an adequate remedy at law because many of the resulting injuries are not readily quantified and Plaintiff will be forced to bring multiple lawsuits to rectify the same conduct.

160.    The hardship to Plaintiff if an injunction is not issued exceeds the hardship to Figure if an injunction is issued. Plaintiff will likely be subjected to substantial identity theft and other damage. On the other hand, the cost to Figure of complying with an injunction by employing reasonable prospective data security measures is relatively minimal, and Figure has a pre-existing legal obligation to employ such measures.

161.    Issuance of the requested injunction will not disserve the public interest. In contrast, such an injunction would benefit the public by preventing another data breach at Figure, thus eliminating the additional injuries that would result to Plaintiff and current and/or former loan applicants and borrowers of Figure's loan services whose confidential information would be further compromised.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, requests that this Court:

A.      Certify this case as a class action pursuant to Federal Rule of Civil Procedure 23;

B.      Order appropriate compensatory, statutory, punitive, and nominal damages to Plaintiff and Class Members under applicable law;

C.      Order appropriate injunctive, equitable, and declaratory relief under applicable law;

D.      Award Plaintiff and the Class pre-judgement and/or post-judgment interest as prescribed by law;

E.      Award reasonable attorneys' fees and costs as permitted by law; and

F.      Enter other and further relief as the Court deems to be both just and fair.

30

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury for any and all issues in this action so triable as of right.

Dated: March 9, 2026

**NORRIS LAW FIRM PLLC**
*/s/ J. Matthew Norris*
1776 Heritage Center Drive, Suite 204
Wake Forest, North Carolina 27587
Telephone: 919-981-4475
Facsimile: 919-926-1676
matt@lemonlawnc.com
NC Bar No. 37206

-and-

**WOODS LONERGAN PLLC**
James F. Woods (*pro hac vice forthcoming*)
Annie E. Causey (*pro hac vice forthcoming*)
60 East 42nd Street, Suite 1410
New York, New York 10165
Tel: 212.684.2500
jwoods@woodslaw.com
acausey@woodslaw.com

-and-

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
RACHELE R. BYRD (*pro hac vice forthcoming*)
STEPHANIE AVILES (*pro hac vice forthcoming*)
750 B Street, Suite 1820
San Diego, CA 92101
Telephone: (619) 239-4599
Facsimile: (619) 234-4599
byrd@whafh.com
saviles@whafh.com

*Attorneys for Plaintiff*

31